**FILED**

Jeffrey A. Apperson, Clerk

MAR 2 8 2008

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES OF AMERICA

PLAINTIFF

v.

CRIMINAL NO. 3:08 CR-33-R

HEALTHESSENTIALS SOLUTIONS, INC.

DEFENDANT

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America, by David L. Huber, United States Attorney for the Western District of Kentucky, and Defendant, HEALTHESSENTIALS SOLUTIONS, INC. ("HES", "HealthEssentials", or the "Defendant"), by its attorneys, Kevin G. Hroblak and John L. Smith, have agreed upon the following:

1.    Defendant agrees to waive Indictment by the grand jury and to enter a plea to a felony Information which will be filed against Defendant by the United States Attorney for the Western District of Kentucky.  That Information charges Defendant with a violation of Title 18, United States Code, Section 1035.

2.    Defendant has read the charges against it contained in the Information, and those charges have been fully explained to it by its attorneys.  Defendant fully understands the nature and elements of the crimes with which it has been charged.

3.    Defendant will enter a voluntary plea to Count 1 in this case.  Defendant will plead guilty because it is in fact guilty of the charge.  The parties agree to the following factual basis for this plea:

a.    Beginning in May of 1998, the Defendant, HealthEssentials,

1

Inc., commenced operations as a Kentucky corporation.

b.    In February 1999, HealthEssentials, Inc. merged with and into HealthEssentials Solutions, Inc., (hereinafter "HealthEssentials") a Delaware corporation, as the surviving corporation.

c.    HealthEssentials generally provided two types of healthcare services to Medicare beneficiaries, which comprised the bulk of HealthEssentials' revenues: (1) primary care provided by nurse practitioners to geriatric patients in non-acute, residential settings such as nursing facilities, homes, and facilities deemed to be assisted living facilities for purposes of Medicare reimbursement ("ALFs") (hereinafter the "Nurse Practitioner Business"), and (2) general home health care services (hereinafter the "Home Health Business").

d.    Between 1999 through 2005, HealthEssentials was a healthcare provider in the Medicare program.

e.    Medicare is a healthcare benefit program in that it is a public plan that affects commerce and under which medical benefits, items, and services are provided to individuals for which payment is made by, or under the terms of, the plans.

f.    As a Medicare provider, HealthEssentials agreed to submit claims to Medicare that were not false or otherwise fraudulent.

g.    The CPT code groups most frequently used by Healthessentials were location-specific.  Thus, certain HealthEssentials' personnel

had to select the CPT code from the group that accurately reflected the location where services were provided.

h.   Medicare reimbursement for service provided in a patient's home using CPT codes 99341 - 99350 was generally higher than reimbursement for comparable services provided in an ALF (CPT domiciliary codes 99321 - 99333) or a nursing facility (99301 - 99313) which provided increased revenue to the business.

i.   In late October 2000, an unnamed individual #1 (an officer and employee of Defendant), with the knowledge of another unnamed individual #2 (an officer and employee of Defendant), requested that Defendant's Washington D.C. law firm determine the Center for Medicare and Medicaid Services' ("CMS") position concerning the appropriate CPT Codes that should be used when submitting claims to the Medicare program for services provided to residents of ALFs.

j.   In December 2000, Defendant's Washington D.C. law firm advised the unnamed individuals #1 and #2, that, based on conversations with CMS and its review of certain Medicare Program rules and regulations, that certain visits in ALFs should be billed using CPT codes 99231-99333.  Further, the law firm indicated that an ALF does not qualify as a private residence, but rather a domiciliary.

k.   The unnamed individuals (#1 and #2) did not disclose this December 2000 correspondence or its findings to the members of

HealthEssentials' Board of Directors, and also kept it concealed from others within HealthEssentials.

l.      Between December 2000 and January 2001, a third unnamed individual (#3) (an employee of Defendant), solicited information from third party billing experts to assist HealthEssentials as billing consultants.  The third unnamed individual's solicitation of such information was done without the knowledge of and not disclosed to the members of the Board of Directors other than unnamed individual #2.  For purposes of this Plea Agreement, "Outside Directors" refers to Bruce Bruckmann, Stephen Sherrill, and Brett Pertuz.

m.     Unnamed individual #3, on behalf of HealthEssentials, received information from a third party billing consultant in January 2001 concerning the ALF issue.  This third party provided information concerning whether visits in ALFs could be billed as home visits.  In January and February 2001, the third party expert told a HealthEssentials employee that visits in ALFs could not be billed as home visits and, instead, must be billed as domiciliary visits, using CPT codes 99321 - 99333.  This information was not provided to the Outside Directors.

n.      Despite this guidance, *i.e.*, that visits in ALFs could not be billed as home visits, certain officers and employees of HealthEssentials, without knowledge of the Outside Directors, failed to implement

4

adequate controls to ensure certain of its billings and revenue were accurate and not false. As a result, the Defendant, by actions of certain of its officers and employees without the knowledge of the Outside Directors, was caused to submit false statements to Medicare by billing ALF visits as though they were visits performed in a patient's home.

o.    During the entire time period that HealthEssentials' Nurse Practitioner Business was in operation, CMS consistently maintained that evaluation and management services performed in Assisted Living Facilities should be billed as domiciliary visits using CPT codes 99321 - 99333 and should not be billed as home visits using CPT codes 99341 - 99350.

p.    On March 9, 1998, CMS wrote a letter to the American Medical Directors Association indicating that Evaluation and Management services performed in an Assisted Living Facility should be billed using CPT codes 99321 - 99333. CMS indicated in its March 9, 1998 correspondence that "It makes no difference that the service is provided in an on-site clinic or the resident's/patient's apartment." This letter was in the possession of an officer and employee while they were employed at HealthEssentials. This correspondence and the positions contained therein were not provided to the Outside Directors.

q.    In January, 2001, CMS issued a transmittal indicating that visits to

ALFs should be billed using CPT codes 99231-99333.  It also indicated that home services codes were not to be used in any facility.

r.  In late January 2002, an officer and employee of Defendant HealthEssentials was again advised by CMS that home visits (using CPT codes 99341 - 99350) should not be billed for services performed in an ALF (CPT codes 99321 - 99333).  This correspondence and the advice contained therein were not provided to the Outside Directors.

s.  On or about February 5, 2002, HealthEssentials' Medical Director, advised unnamed individuals #1 and #2 that another healthcare provider had stopped performing evaluation and management services in ALFs because of an audit performed in Phoenix, Arizona that resulted in the downcoding of services performed in ALFs that had been improperly billed as home visits.  This information was not provided to the Outside Directors.

t.  On August 23, 2002, certain officers and employees, acting on behalf of HealthEssentials, met with representatives from CMS in Maryland to discuss proper reimbursement level for services provided in ALFs.  Again, they were told by CMS that visits performed in ALFs should be billed using CPT codes 99321 - 99333 and that they should send examples of denials to CMS as well as meet with carriers about whether individual facilities they

serve are facilities for billing purposes. This information from CMS was not provided to the Outside Directors.

u.     Despite this guidance, certain officers and employees, without knowledge of the Outside Directors, caused the Defendant to submit false statements to Medicare by seeking payment for visits in ALFs as though they were home visits (using CPT codes 99341 - 99350).

v.     By 2003, a billing coder employed by HealthEssentials was instructed by her supervisor to prepare billing forms in such a manner to remove any indication that a visit had been performed in an ALF. Neither this instruction nor the omissions from the billing forms was known by the Outside Directors.

w.     Before 2002, the Defendant did not have a procedure in place for determining the appropriate billing code for services rendered to a patient in an ALF or for determining whether a patent's location was an ALF. The Outside Directors did not know that controls were not in place for these issues. Following August 2002, the Defendant had stated procedures but certain officers and employees failed to implement such procedures. These failures were not disclosed to the Outside Directors. As such, certain officers and employees of the Defendant, without knowledge of the Outside Directors, caused improper CPT codes to be submitted by the Defendant to Medicare. As a result, the Defendant was caused

to defraud Medicare by submitting false billings to Medicare for services that were purported to be home visits (using CPT codes 99341 - 99350) when, in fact, they were for services performed in ALFs.

x.    On March 1, 2005 (the "Petiton Date"), the Defendant filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Kentucky (the "Bankruptcy Court").

y.    On September 22, 2006, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Third Modified Joint Plan of Liquidation (the "Joint Plan").

4.    Defendant understands that the charges to which it will plead guilty carries a maximum fine of $500,000 or not more than the greater of twice the gross gain or twice the gross loss.

5.    Defendant understands that by pleading guilty, it surrenders certain rights set forth below.  Defendant's attorneys have explained those rights to it and the consequences of its waiver of those rights, including the following:

a.    If Defendant persists in a plea of not guilty to the charges against it, it has the right to a public and speedy trial.  The trial could either be by a jury trial or a trial by the judge sitting without a jury.  If there is a jury trial, the jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.  The jury would be instructed that Defendant is presumed innocent and that it could not convict the

Defendant unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt.

b.      At a trial, whether by a jury or a judge, the United States would be required to present its witnesses and other evidence against Defendant.  Defendant would be able to confront those government witnesses and its attorneys would be able to cross-examine them.  In turn, Defendant could present witnesses and other evidence in its own behalf. If the witnesses for Defendant would not appear voluntarily, it could require their attendance through the subpoena power of the Court.

c.      At a trial, Defendant would have a privilege against self-incrimination and it could decline to call witnesses, without any inference of guilt being drawn from its refusal to call any witnesses.  If Defendant desired to do so, it could testify in its own behalf.

6.      Defendant understands that the United States Attorney's Office has an obligation to fully apprise the District Court and the United States Probation Office of all facts pertinent to the sentencing process, and to respond to all legal or factual inquiries that might arise either before, during, or after sentencing.  Defendant admits all essential elements of the information count to which it pleads.

7.      Defendant understands that the United States will inform the court that it should order payment of a total of $3,105,931 in restitution payable through the Bankruptcy Court in In Re: HealthEssentials Solutions, Inc., et al., Bankruptcy Case No. 05-31218, pursuant to the terms and conditions as set forth in the settlement agreement between the United States, Jerri Lynn Stydinger, Michael and Leigh

RoBards, Michael P. Zeitlin, M.D., and the Creditors' Trustee, entered on or about March/April, 2008 and the Joint Plan. The Defendant further understands that, notwithstanding the recommendation of the United States, it may be responsible for a fine or costs of prosecution.

8.    Defendant acknowledges liability for the special assessment mandated by 18 U.S.C. § 3013 and will pay the assessment in the amount of $400 to the United States District Court Clerk's Office by the date of sentencing.

9.    At the time of sentencing, the United States will advise the Court of the applicable statutory fine alternatives. The United States is aware, however, that the Defendant has filed Chapter 11 bankruptcy, and it appears that the imposition of this fine would unduly complicate or prolong the sentencing process. The United States, therefore, will recommend that following a review of the financial status of the Defendant that the Court not impose said fine if it appears that the Defendant has an inability to pay in accordance with the Federal Sentencing Guidelines 8C2.2(a) and 8C3.3.3.

10.    Both parties have independently reviewed the Sentencing Guidelines applicable in this case, and in their best judgment and belief, conclude that no fine should be imposed. The foregoing statements of applicability of sections of the Sentencing Guidelines and the statement of facts are not binding upon the Court. The Defendant understands the Court will independently calculate the Guidelines at sentencing and Defendant may not withdraw the plea of guilty solely because the Court does not agree with either the statement of facts or Sentencing Guideline application.

11.    Defendant is aware of its right to appeal its conviction and that 18 U.S.C.

§ 3742 affords a defendant the right to appeal the sentence imposed.  The Defendant knowingly and voluntarily waives the right (a) to directly appeal its conviction and the resulting sentence pursuant to Fed. R. App. P. 4(b) and 18 U.S.C. § 3742, and (b) to contest or collaterally attack his conviction and the resulting sentence pursuant to 28 U.S.C. § 2255 or otherwise.  Defendant understands and agrees that nothing in this plea agreement should be construed as a waiver by the United States of its right to appeal the sentence under 18 U.S.C. § 3742.

12.    The United States agrees that any statements made by Defendant in connection with this Agreement shall not be used against Defendant in any subsequent civil or criminal prosecutions, unless and until there is a determination by the Court that Defendant has breached this Agreement.  However, the United States will be free to use at sentencing in this case any non-confidential statements and evidence provided by Defendant in connection with this Agreement.

13.    In the event the United States believes Defendant has failed to fulfill any obligations under this Agreement, then the United States shall have the option of being relieved of its obligations under the plea agreement, subject to the Court's approval.

14.    Defendant and the United States agree that in the event the Defendant has breached the Agreement:

A.    Defendant will not be permitted to withdraw any guilty plea tendered under this Agreement and agrees not to petition for withdrawal of any guilty plea;

B.    The United States will be free to make any recommendations to the Court regarding sentencing in this case;

C. Any non-confidential evidence or statements made by Defendant during the cooperation phase will be admissible at any trials or sentencing;

D. The United States will be free to bring any other charges it has against Defendant; and

E. The United States will be free to seek forfeiture of any assets not covered by this Agreement.

15. Defendant agrees to make a confidential full and complete disclosure of its assets and financial condition and will submit to a confidential investigation by the Financial Litigation Unit of the United States Attorney's Office for the purpose of confirming its financial condition.

16. This Agreement is entered into by the United States on the basis of the express representation of Defendant that it is making a full and complete disclosure of all assets over which it exercises control. This Agreement does not bind the Internal Revenue Service from the collection of taxes.

17. If necessary, Defendant agrees to an investigation by the United States Marshal's Service for the purpose of assessing the value of each and every asset. Defendant agrees to undergo a full debriefing in order to accomplish this end.

18. Defendant waives and agrees to waive any rights under the Speedy Trial Act and understands and agrees that sentencing may be delayed until the cooperation phase has been completed and title to all assets has fully vested in the United States. The reason for such waiver is so that at sentencing the Court will have the benefit of all relevant information.

19.    Nothing in this Agreement shall protect Defendant in any way from prosecution for any offense committed after the date of this Agreement, including perjury, false declaration, or false statement, in violation of 18 U.S.C. §§ 1621, 1623, or 1001, or obstruction of justice, in violation of 18 U.S.C. §§ 1503, 1505, or 1510, should Defendant commit any of those offenses during the cooperation phase of this Agreement.  Should Defendant be charged with any offense alleged to have occurred after the date of this Agreement, the information and documents disclosed to the United States during the course of the cooperation could be used against Defendant in any such prosecution.

20.    Defendant agrees not to pursue or initiate any civil claims or suits against the United States of America, its agencies or employees, whether or not presently known to Defendant, arising out of the investigation or prosecution of the offenses covered by this Agreement.  The United States Attorney for the Western District of Kentucky agrees to bring no additional criminal charges in the Western District of Kentucky against the defendant relating to or arising from the offenses charged in this Information, except for any crime unknown to the United States Attorney for the Western District of Kentucky prior to the time this Plea Agreement is signed by the parties.

21.    The Defendant hereby waives all rights, whether asserted directly or by a representative other than the Plan Administrator or Creditors Trustee, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case pursuant to the Freedom of Information Act, 5 U.S.C. § 552 or the Privacy Act of 1974, 5 U.S.C. § 552(a).  Notwithstanding the

above, the Creditors Trustee and Plan Administrator may request such information.

22.     Defendant agrees to interpose no objection to the United States transferring evidence or providing information concerning Defendant and this offense, to other state and federal agencies or other organizations, including, but not limited to the Internal Revenue Service, other law enforcement agencies, and any licensing and regulatory bodies, or to the entry of an order under Fed. R. Crim. P. 6(e) authorizing transfer to the Examination Division of the Internal Revenue Service of Defendant's documents, or documents of third persons, in possession of the Grand Jury, the United States Attorney, or the Criminal Investigation Division of the Internal Revenue Service.

23.     It is understood that pursuant to Fed. R. Crim. P. 11(c)(1)(B), the recommendations of the United States are not binding on the Court.  In other words, the Court is not bound by the sentencing recommendation and Defendant will have no right to withdraw its guilty plea if the Court decides not to accept the sentencing recommendation set forth in this Agreement.

24.     Defendant agrees that the disposition provided for within this Agreement is fair, taking into account all aggravating and mitigating factors.  Defendant states that it has informed the United States Attorneys' Office and the Probation Officer, either directly or through its attorney, of all mitigating factors.  Defendant will not oppose imposition of a sentence incorporating the disposition provided for within this Agreement, nor argue for any other sentence.  If Defendant argues for any sentence other than the one to which it has agreed, it is in breach of this Agreement.  Defendant agrees that the remedy for this breach is that the United States is relieved of its obligations under this Agreement, but Defendant may not withdraw its guilty plea

because of its breach.

25.     The execution of this agreement has been authorized by the Plan Administrator of the bankruptcy estate of the Defendant.  The Defendant and the Government each represents and warrants that it has the full right, power, and authority to execute and deliver this agreement, subject to Bankruptcy Court approval as set forth below.

26.     This document states the complete and only Plea Agreement between the United States Attorney for the Western District of Kentucky and Defendant in this case, and is binding only on the parties to this Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified other than in writing that is signed by all parties or on the record in Court.  No other promises or inducements have been or will be made to Defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.

27.     This Plea Agreement is effective only upon (i) signature by all of the Parties and (ii) the entry of a Final Order by the Bankruptcy Court authorizing the entry into this Plea Agreement by the Plan Administrator on behalf of HealthEssentials Solutions, Inc. and approving the Plea Agreement.  "Final Order," as used herein, shall mean an order, judgment or other decree of the Bankruptcy Court, the operation or effect of which has not been reversed, stayed or modified, and as to which order, judgment or decree: (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time to appeal, to move for reconsideration or leave to appeal, or to petition for certiorari therefrom has expired by reason of statute, applicable law or otherwise and as to which no appeal, motion for reconsideration or leave to appeal, or petition for certiorari has been taken or is

pending (or if such appeal, motion or petition has been taken, has been finally decided), as a result of which such order, judgment or decree shall have become final in accordance with applicable statute or law.   The Plan Administrator will promptly seek and support Bankruptcy Court approval of this Plea Agreement.  In the event that the Bankruptcy Court does not authorize the undersigned Plan Administrator to enter this Plea Agreement on behalf of HealthEssentials Solutions, Inc. or approve the Plea Agreement by a Final Order, this Plea Agreement shall be null and void and the Parties will not be bound by the terms of this Plea Agreement.

[remainder of page intentionally left blank]

AGREED:

DAVID L. HUBER
United States Attorney

By _____          3/24/08
Lettricea Jefferson-Webb                 Date
Assistant U.S. Attorney

_____              3/26/08
Benjamin S. Schecter                     Date
Assistant U.S. Attorney


I have read this Agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it.


_____          _____
HEALTHESSENTIALS SOLUTIONS, INC.          Date
Authorized Signatory for Defendant, subject
to Bankruptcy Court approval
By: John L. Smith, Esquire


I am counsel to the Plan Administrator of HealthEssentials Solutions, Inc. I have carefully reviewed every part of this Agreement with the Plan Administrator. To my knowledge, my client's decision to enter into this Agreement is an informed and voluntary one.


_____          _____
Kevin G. Hroblak, Esquire                 Date
Counsel for Plan Administrator of
HealthEssentials Solutions, Inc.


_____          _____
John L. Smith, Esquire                    Date
Counsel for Plan Administrator of
HealthEssentials Solutions, Inc.


1769137v.10

AGREED:

DAVID L. HUBER
United States Attorney

By:

_____          _____
Lottricea Jefferson-Webb                 Date
Assistant U.S. Attorney


_____          _____
Benjamin S. Schecter                     Date
Assistant U.S. Attorney


    I have read this Agreement and carefully reviewed every part of it with my
attorney.   I fully understand it and I voluntarily agree to it.

*John L. Smith*                          *March 26, 2008*
_____          _____
HEALTHESSENTIALS SOLUTIONS, INC.         Date
Authorized Signatory for Defendant, subject
to Bankruptcy Court approval
By: John L. Smith, Esquire


    I am counsel to the Plan Administrator of HealthEssentials Solutions, Inc.  I have
carefully reviewed every part of this Agreement with the Plan Administrator.  To my
knowledge, my client's decision to enter into this Agreement is an informed and
voluntary one.

*Kevin G. Froblak*                       *March 2a 2008*
_____          _____
Kevin G. Froblak, Esquire                Date
Counsel for Plan Administrator of
HealthEssentials Solutions, Inc.

*John L. Smith*                          *March 26, 2008*
_____          _____
John L. Smith, Esquire                   Date
Counsel for Plan Administrator of
HealthEssentials Solutions, Inc.


*782137e:2*

17